# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:17-cr-00114 |
| SHAMAIN JOHNSON and DEANTHONY BRYANT, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Government's motion to reconsider (Doc. No. 213) the part of the Court's June 20, 2019 Memorandum and Order (Doc. Nos. 192-193) that granted Defendant Johnson's motion to suppress evidence from the February 13, 2017 Wal-Mart traffic stop. The Government asks the Court to reconsider its legal conclusion that Johnson was seized when his car was blocked by the car of the Metro detectives, arguing instead that he was seized several seconds later when the officers made contact with him in his car. The Government further contends that this correction should lead to a finding of reasonable suspicion sufficient to defeat the motion to suppress. Johnson opposes the motion. (Doc. No. 219.) For the following reasons, the motion to reconsider will be granted.

I.  Legal Standard

Although the Federal Rules of Criminal Procedure make no provision for motions to reconsider, "[c]ourts adjudicating motions to reconsider in criminal cases typically evaluate such motions under the same standards applicable to a civil motion to alter or amend judgment pursuant to [Federal Rule of Civil Procedure] 59(e)." United States v. Robinson, 5 F. Supp. 3d 933, 936 (S.D. Ohio 2014) (quoting United States v. Titterington, No. CR-2-20165, 2003 WL 23924932, at

*1 (W.D. Tenn. May 22, 2003)). Under Rule 59(e), the Sixth Circuit has held motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. Intera Corp. v. Henderson, 428 F.3d 605, 620 (6th Cir. 2005) (citing GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999)). "A Rule 59(e) motion 'may not be used to argue a new legal theory.'" Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC, 477 F.3d 383, 395 (6th Cir. 2007) (quoting FDIC v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992)). The motion "is proper only if it contains 'an argument or controlling authority that was overlooked or disregarded in the original ruling, presents manifest evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law.'" Auday v. Wet Seal Retail, Inc., No. 1:10-CV-260, 2012 WL 124080, at *1 (E.D. Tenn. Jan. 17, 2012).

II.  The Court's June 20 Order

In the June 20 Order, the Court concluded that Metro detectives did not have reasonable suspicion at the time they seized Johnson's vehicle. In doing so, the Court examined the testimony of Detectives Moore and Irwin and concluded that reasonable suspicion did not exist at the time the driver of the red truck exited his vehicle. (Doc. No. 192 at 16-19.) The Court then considered whether subsequent developments tipped the totality of the circumstances in favor of reasonable suspicion. (Id.) The Court held that reasonable suspicion needed to exist by the time the police detectives "engaged their vehicle lights and blocked Johnson's car, not after when they exited the police vehicle and approached his car on foot." (Doc. No. 192 at 16.)

The Court concluded that the testimony of Detective Irwin was "neither consistent nor credible." (Id. at 19.) Detective Moore's testimony did not pose this problem. Moore explained that it was only after he exited the parked police car that he witnessed suspicious behavior between

2

the two individuals in the tan car. (Id.) The Court granted the motion to suppress because the detectives had not articulated reasonable suspicion of criminal activity "when they crossed the aisle, engaged their lights, and blocked Johnson's vehicle." (Id. at 20.)

The Court's conclusion regarding the time of the seizure arose, in part, because it did not appear to be a disputed issue. The Government's opposition brief, for example, appeared to focus on the detectives having sufficient facts to conclude that Johnson was engaged in criminal activity prior to blocking his car. (See Doc. No. 73 at 6-7.) This approach continued at the motions hearing, where Government's counsel and its witnesses appeared to agree concerning when Johnson was seized. For example, the Government inquired of Moore: "After you seized Mr. Johnson, or they're not free to leave because your lights are on, what did you do next?" Moore replied, "I exit the vehicle to make contact with the front passenger – front seat occupant Mr. Johnson." Likewise, the Government had this exchange with Irwin:

> Q: Typically, when you cut on your lights on your police car, is someone free to go?
> A. No.
> Q. So they're seized at that point?
> A. Yes. Yes.
> Q. So when you cut your lights on in this video, Mr. Lee and Mr. Johnson were not free to leave?
> A: No.

(Doc. No. 203 at 28.) These inferences, of course, are not dispositive if there is contrary controlling authority that must be applied by the Court.

III. Analysis

The Government argues that the seizure did not commence until Johnson became alerted to the detectives' presence when the detectives approached the vehicle and Johnson submitted to the detectives' show of authority. (Doc. No. 213 at 2-6.) The Government further argues that a change in the time of seizure should alter the reasonable suspicion totality of the circumstances

3

analysis in its favor. (Id. at 7-9.) Johnson argues that authority supports denying motion on the ground that he passively submitted to the police. (Doc. No. 219.)

      A.      <u>The *Terry* Principle and Measuring When a Seizure Occurs</u>

It is axiomatic that the Fourth Amendment to the U.S. Constitution forbids "unreasonable searches and seizures." <u>Elkins v. United States</u>, 364 U.S. 206, 222 (1960). In service of this rule, the Supreme Court endorsed the principle that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." <u>Terry v. Ohio</u>, 392 U.S. 1, 16 (1968). However, the court cautioned that "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." <u>Id</u>. at 19 n. 16; <u>see also</u> <u>Florida v. Bostick</u>, 501 U.S. 429, 437 (1991) ("[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.") "[W]hat constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs." <u>Michigan v. Chesternut</u>, 486 U.S. 567, 573 (1988) (internal quotation marks omitted). Thus, a defendant cannot be "seized" unless a show of authority has been communicated by the police and the defendant has concluded that he or she is not free to leave. <u>See, e.g.</u>, <u>Brendlin v. California</u>, 551 U.S. 249, 254 (2007) ("[T]here is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."); <u>United States v. Smith</u>, 594 F.3d 530, 535 (6th Cir. 2010) ("In order for a seizure to occur, the encounter must not be consensual and the officers must use physical force or the individual must submit to the officers' show of authority."); <u>United States v.</u>

Jones, 562 F.3d 768, 774 (6th Cir. 2009) (passengers in vehicle are "seized" only to the extent that they submit to officers' show of authority); United States v. McCauley, 548 F.3d 440, 443 (6th Cir. 2008) (defendant was not "seized" until the point that he had complied with officers' orders and submitted to a show of authority).

A defendant's awareness of the police's show of authority is implicit in the oft-cited trio of cases in which the Sixth Circuit has concluded that a seizure occurred when a police car blocked in the car of a defendant. Johnson contends that, in these cases, the police seized the defendants solely by virtue of blocking their cars. (Doc. No. 219 at 4.) However, a closer examination reveals that, under the circumstances of each of these cases, the defendant was alerted to the police action that the court found to be the seizure, and this awareness necessarily contributed to the court's conclusion that a reasonable person in the defendant's position would not have felt free to leave. See United States v. Young, 707 F.3d 598, 603 (6th Cir. 2012) (concluding that seizure occurred when police vehicle blocked car, officers shined flashlights into defendants' car, and defendant responded); United States v. Gross, 662 F.3d 393, 396, 400 (6th Cir. 2011) (finding seizure occurred when police vehicle blocked car, officers shined spotlight into defendant's car, and officers "observed the passenger react"); United States v. See, 574 F.3d 309, 313 (6th Cir. 2009) (finding seizure occurred when police vehicle parked in front of, and thus in clear sight of the passengers in, the defendant's vehicle that was backed into a parking spot).

Notably, Johnson does not dispute the importance of being alert to the police show of authority. (See Doc. No. 219 (agreeing that the measuring point for his seizure is when "a reasonable person in the car *would believe* that she was free to leave or to terminate contact with the police; and, that submission to police authority is necessary before there is a seizure under the Fourth Amendment") (emphasis added).) It is true, as Johnson indicates, that the Supreme Court

5

has noted that "what may amount to submission depends on what a person was doing before the show of authority: a fleeing man is not seized until he is physically overpowered, but one sitting in a chair may submit to authority by not getting up to run away." (Id. (citing Brendlin, 551 U.S. at 262).) But "passive acquiescence" is still just a type of submission to a show of police authority of which a defendant must be aware. Brendlin, 551 U.S. at 262; Smith, 594 F.3d 530. Indeed, additional authority cited by Johnson involves circumstances in which the defendant was clearly alerted to the police show of authority at the time the police vehicle blocked the defendant's vehicle. See, e.g., United States v. Bridges, 626 F. App'x 620, 621, 623 (6th Cir. 2015) (finding car was seized when egress was blocked by police car after police car was twice noticed by defendant); Jones, 562 F.3d at 771, 774 (concluding that passive occupants of car were seized when police visibly blocked front and back bumpers of car with emergency lights on, while passenger who jumped out with "deer in headlights look" on face was not seized until he yielded); United States v. Clay, 181 F. App'x 542, 543-44 (6th Cir. 2006) (concluding seizure occurred after police officers blocked driveway of car while passengers "intently watch[ed]" them); United States v. Baldwin, 114 F. App'x 675, 676-79 (6th Cir. 2004) (finding seizure occurred where police vehicles surrounded parked car in front and back on street and drew weapons).

The Sixth Circuit most recently highlighted the need for this awareness in particular circumstances in United States v. Williams, 525 F. App'x 330 (6th Cir. 2013). Admittedly, Williams differed from this case in that the defendant's vehicle was only partially blocked. Nevertheless, the Sixth Circuit, after surveying overarching principles and its own caselaw in this area including See and Gross, explained that a court's focus must remain on whether the police officer's actions "created a coercive situation in which *he clearly communicated to the vehicle's occupants* that they were under investigation." Id. at 333-34 (emphasis added). Chief Judge Cole

6

further stated that, in determining whether and when a seizure occurred, "[t]he ultimate question remains whether the defendant "*believed* he was . . . . free to leave," . . . *not* whether it was merely *physically possible*." Id. at 333 (emphasis added). To have a view on whether he is free to leave, of course, a defendant must necessarily be alert to the fact of law enforcement's potential impediment to his or her departure.

In sum, for Fourth Amendment purposes, a seizure occurs when a police officer communicates a show of authority to the defendant, the defendant becomes alert to that show of authority, and the defendant acknowledges that authority. In other words, the defendant must be aware that he is not free to terminate the police encounter or leave. Otherwise, only an attempted seizure has occurred.

B. Application to the February 13, 2017 Stop

Utilizing this standard, there is no evidence that Johnson was aware of the detectives' show of authority at the moment the detectives came to a stop behind Johnson's vehicle – i.e., at the :58 mark on the surveillance video. See Def's Ex. 10. First, there is no testimony from Johnson that he was alerted to the detectives' presence at that time. Second, the detectives' police vehicle was unmarked and would not have provided an immediate clue as to the detectives' identity. Third, the police vehicle did not have blue lights on the roof; rather, the blue lights were disguised in the headlights and windscreen and are difficult to see by a reasonable person sitting low in another vehicle. See id. Further, the detectives' vehicle arrived and parked horizontal to the rear of Johnson's parked car in a row of crowded cars, making it essentially impossible for someone facing forward in Johnson's car to see the detectives' lights either on approach or when the police vehicle came to a stop. Fourth, there was no testimony from either detective that Johnson alerted to their

7

presence when their came to a stop and blocked Johnson's car, or that the detectives did anything at that precise moment to gain Johnson's attention such as engage a siren.

Finally, and most importantly, Detective Moore testified that Johnson only alerted to the police presence when the detectives approached Johnson on foot, seconds after they had arrived and blocked in Johnson's car – at approx. 1:03 on the surveillance video. (Doc. No. 204 at 23-24; Def. Ex. 10.) He testified:

> *I exit the vehicle* to make contact with the front passenger -- front seat occupant Mr. Johnson. *As I exited my car* – I'll wait until the video catches up. *As I stand up from the car*, the driver and Mr. Johnson are turned to one another, facing one another and the center console. I see hands back and forth. *As I shut the door*, I see money in Mr. Johnson's left hand, and I see a silver plastic bag in his right hand. I guess – I'm – I approach – *as I'm approaching* to make contact with him, *he's alerted to me* . . .

(Doc. No. 204 at 23-24 (emphasis added).) Detective Moore testified further that, once alerted to the police presence at his window, Johnson "immediately shove[d a] plastic bag in his right hand down into his waistband" in an effort to conceal it. (Id. at 24.) Moore then "unholstered [his] weapon" because "the front waistband is a common place for individuals to conceal weapons also." (Id.) According to Moore, he "order[ed] [ ] Johnson to show [ ] his hands." Id. Johnson "complied." (Id.)

Based upon the totality of circumstances of the February 13, 2017 stop, there is no evidence that Johnson was aware of the detectives blocking him in (at :58 seconds) or believed he was not free to leave until he reacted to the police presence at his car window (at 1:03 seconds). Nor has the Court been presented with a compelling argument that a reasonable person in Johnson's position would have had any greater degree of awareness. Further, Johnson's own behavior supports the Court's conclusion. If Johnson had been aware of the detectives' presence when they blocked his car five seconds earlier, it is simply illogical that Johnson would still be holding money

8

and a silver bag in his hand when Moore arrived at his window, not yet having attempted to hide the contraband.

As discussed above, Johnson could not be "seized" under circumstances of which he was not aware, whether he behaved "passively" or otherwise. Only an attempted seizure occurred until the detectives' show of authority was manifested to Johnson. The detectives' show of authority was accomplished when Johnson was blocked in, the detectives' car lights were activated, and the detectives approached Johnson's car windows with weapons drawn. On reconsideration, the Court concludes that this is the point from which Johnson's seizure is correctly measured.

C. Reasonable Suspicion Determination

The Court re-evaluates its conclusion regarding reasonable suspicion based upon the time Johnson's seizure was accomplished. See McCauley, 548 F.3d at 443-44 ("We determine whether reasonable suspicion existed at the point of seizure – not . . . at the point of attempted seizure. Thus, we need only determine whether reasonable suspicion existed at the time appellant actually submitted."). The Government bears the burden of proving the existence of reasonable suspicion by a preponderance of the evidence, United States v. Torres-Ramos, 536 F.3d 542, 552 (6th Cir. 2008), and the court evaluates reasonable suspicion based on the totality of the circumstances, United States v. Arvizu, 534 U.S. 266, 273 (2002). The government must articulate specific facts that create reasonable suspicion for the initial detention.[1] Id. (citing Torres-Ramos, 536 F.3d at 551). These specific facts must "warrant a man of reasonable caution in the belief that the action taken was appropriate." Terry, 392 U.S. at 21-22 (citations omitted). "The officer must be able to

---

[1] If the initial detention based on reasonable suspicion is proper, then the second question is whether the detention is "limited in [both] scope and duration." Florida v. Royer, 460 U.S. 491, 500 (1983); Terry, 392 U.S. at 19-20; Torres-Ramos, 536 F.3d at 551-52 (quoting United States v. Caruthers, 458 F.3d at 464 (6th Cir. 2006)). However, this was not raised as a basis for the motion to suppress the February 13, 2017 stop and will not be discussed further herein.

articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (citing Terry, 392 U.S. at 27). Instead, an officer must be "able to articulate some minimal level of objective justification for making the stop," United States v. Waldon, 206 F.3d 597, 604 (6th Cir. 2000) (quotations omitted), based upon "specific reasonable inferences which he is entitled to draw from the facts in light of his experience," United States v. Foster, 376 F.3d 577, 585 (6th Cir. 2004) (quoting Terry, 392 U.S. at 27).

Detective Moore testified that, based upon his experience with the Madison Crime Suppression Unit, the parking lot of the Wal-Mart on North Gallatin Pike is a "common place for . . . narcotic drug activity to take place." (Doc. No. 204 at 11.) It is a good place for a "drug dealer who wants to get comfortable or, you know, gain as much concealment [as] possible prior to the transaction taking place." (Id.) Moore testified that he witnessed the driving-parking-driving-parking behavior of the tan car and red truck and, although there was no cause for police interaction at that point, it raised his suspicion and he believed "a drug transaction [was] about to take place." (Id. at 13-14.) Moore witnessed the driver of the red truck cross the parking aisle, approach Johnson's side of the tan car, have a brief verbal exchange, walk around the front of the car, and get into the driver's seat. (Id. at 21.) As this was happening, the detectives' vehicle (driven by Irwin) quickly pulled forward, horizontal to Johnson's parked car, in an attempt to "catch them in the act." (Id. at 22.) After the police vehicle came to a stop, at :58 on the surveillance video (Def. Ex. 10), Moore exited and moved toward Johnson's car. As he did so, he saw the driver of the red truck and Johnson "turned to one another, facing one another and the center console" with "hands back and forth." (Doc. No. 204 at 24.) As Moore approached Johnson's car, nearing 1:03 on the surveillance video (Def. Ex. 10), he "s[aw] money in Mr. Johnson's left hand," and "a silver plastic

10

bag in his right hand." (Id.) At that point, Johnson noticed Moore and "shove[d] the plastic bag in his right hand down into his waistband . . . in an effort to conceal it." (Id. at 24.) At the same time, Moore noticed Johnson still had money in his left hand. (Id. at 25.) When Moore was asked again: "When you walked up and were standing on the passenger side of the car that [ ] Johnson was in, what did you see in [ ] Johnson's hands," he succinctly responded, "[m]oney and drugs."[2] (Id. at 28-29.)

Not all of these circumstances were included in the Court's initial analysis. (Doc. No. 192 at 16-20.) When previously measuring Johnson's seizure from the time the detectives' parked their vehicle, the Court concluded that they fell short of reasonable suspicion because they were "essentially . . . guessing that there might be a drug deal happening." (Doc. No. 192 at 20.) However, with the moment of Johnson's seizure reconsidered, subsequent specific, articulable facts put forth by the Government alter that calculus. The most important of these is Moore's testimony that, in the few seconds that he approached Johnson's car on foot, he witnessed (1) the driver of the red truck and Johnson engaged in suggestive hand-to-hand behavior, (2) money in Johnson's left hand, and (3) a silver plastic bag in Johnson's right hand that he attempted to secrete upon becoming aware of Moore's presence. When taken together, all of the events could reasonably have been perceived by Moore as a drug transaction. The Court now concludes, based on this augmented totality of the circumstances, that the detectives had reasonable suspicion to make an investigatory stop of Johnson on February 13, 2017.

---

[2] The Court does not consider the testimony of Detective Irwin, whom it previously found to be not credible. (Doc. No. 192 at 19.) Among other things, Irwin claimed to have seen the parties engaged in hand-to-hand transaction behavior while the police vehicle was still moving, testimony that did not sync with the video and was inconsistent with the clear testimony of Detective Moore. (Id.)

IV.     Conclusion

For these reasons, the motion to reconsider (Doc. No. 213) is **GRANTED**. The Court's June 20, 2017 Memorandum and Order (Doc. Nos. 192, 193) are **VACATED** solely regarding the February 13, 2017 stop. Johnson's motion to suppress concerning the February 13, 2017, and August 11, 2016 stops (Doc. No. 68 ) is **DENIED** in full.

The Joint Motion for Extension of Time (Doc. No. 189) for pretrial filings pending the outcome of the motions to suppress is **DENIED AS MOOT**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE