# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) |
| v. | ) NO. 3:17-cr-00114 |
| SHAMAIN JOHNSON, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

This Memorandum Opinion follows the Court's August 1, 2019 Order (Doc. No. 271) denying Johnson's Motion for Reconsideration (Doc. Nos. 265 and 290) of the July 18, 2019 Order denying his motion to suppress evidence from the February 13, 2017 Wal-Mart stop (Doc. No. 225). On June 20, 2019, the Court granted Johnson's motion to suppress. (Doc. Nos. 192-193.) The Court reconsidered its decision, as the Government requested, and concluded applying a reasonable person analysis that Johnson's motion to suppress must be denied. Two days before trial, Johnson made a motion for reconsideration in which he made more specific arguments. (Doc. Nos. 265 and 290.) The Government responded in opposition. (Doc. No. 270.) The Court denied the motion and this Memorandum Opinion explains why. (Doc. No. 271.)

I. Legal Standard

For motions to reconsider in criminal cases, courts borrow the standards applicable to a civil motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). United States v. Robinson, 5 F. Supp. 3d 933, 936 (S.D. Ohio 2014) (quoting United States v. Titterington, No. CR-2-20165, 2003 WL 23924932, at *1 (W.D. Tenn. May 22, 2003)). These motions may be granted if there is a clear error of law, newly discovered evidence, an intervening change in

controlling law, or to prevent manifest injustice. Intera Corp. v. Henderson, 428 F.3d 605, 620 (6th Cir. 2005) (citing GenCorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999)). "This is an 'extraordinary' motion and 'is seldom granted because it contradicts notions of finality and repose.'" AIA Eng'g Ltd. v. Magotteaux Int'l S/A, No. 3:09-cv-00255, 2012 WL 4442665, at *8 (M.D. Tenn. Sept. 21, 2012) (quoting Waiters v. City of Cleveland, No. 1:08-CV-2006, 2009 WL 3063384, at *1 (N.D. Ohio, Sept. 24, 2009)). These motions are aimed at reconsideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made earlier. See Sault Ste. Marie Tribe of Chippewa Indians v. Engler, 146 F.3d 367, 374 (6th Cir. 1998)); F.D.I.C. v. World Univ., Inc., 978 F.2d 10, 16 (6th Cir. 1992).

II.  Analysis

Johnson's motion for reconsideration asserts that the Court has committed a clear error of law. His argument is straightforward. He contends that the Court misunderstands Fourth Amendment law, failed to apply the "objective standard for determining whether a person has been seized within the meaning of the Fourth Amendment," and instead has adopted a new "subjective standard." (Doc. No. 265 at 1-2.) More specifically, citing a plethora of Supreme Court and Sixth Circuit caselaw, Johnson argues that the Court has ignored basic Fourth Amendment jurisprudence dictating that "a person is seized within the meaning of the Fourth Amendment when: (1) an officer "by means of physical force or show of authority has in some way restrained [his] liberty," Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968), *such that "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave,"* Michigan v. Chesternut, 486 U.S. 567, 573 (1988); and (2) the person "yields" to this show of authority, California v. Hodari D., 499 U.S. 621, 626 (1991). (Id. at 3-4 (quoting United States v. Goyer, 567 F. App'x 414, 417–18 (6th Cir. 2014) (emphasis added by Johnson)). According to Johnson, the

Court failed to consider when a reasonable person in his position would have believed that he was not free to leave the investigatory stop of February 13, 2017. (Id. at 5-6.) Johnson also contends that the Court has also misinterpreted car-blocking case precedent of the Court of Appeals for the Sixth Circuit. (Id. at 7-9.)

Johnson is wrong.

To be clear, the Court applied the objective standard set forth in Supreme Court and Sixth Circuit case law. The Court began the legal discussion by articulating the fundamental principle that "only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." (Doc. No. 225 at 4 (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968).) *Immediately following* this bedrock point of Fourth Amendment law, the Court quoted the United States Supreme Court for the crucial test of whether, taking into account all of the circumstances surrounding the encounter, the police conduct would "have communicated to *a reasonable person* that he was not at liberty to ignore the police presence and go about his business." (Doc. No. 225 at 4 (citing Florida v. Bostick, 501 U.S. 429, 437 (1991).) In support of these propositions, the Court *cited* Michigan v. Chesternut, 486 U.S. 567 (1988) and Brendlin v. California, 551 U.S. 249 (2007), the cases now relied upon by Johnson. (Id. at 4.) Finally, the Court explained that *Johnson himself did not dispute* that the measuring point for his seizure is when "*a reasonable person in the car would believe that she was free to leave or to terminate contact with the police[.]*" All of this demonstrates that the Court applied *precisely* the objective standard that Johnson claims was missing from the Court's opinion.

The Court then proceeded to explain that one factor to consider in the analysis is the extent to which the police have made their presence known. (Id. at 4-5.) Johnson now contends that this is incorrect, and United States v. Young, United States v. Gross, and United States v. See trio of

3

car-blocking cases hold that "blocking of a car is a seizure of the car and its occupants, *without more*." (Doc. No. 290 at 7.) This proposition, however, undercuts the very legal principles that Johnson cites for the need to objectively analyze all of the circumstances. This is why the Court explained that Young, Gross, and See do not articulate a bright-line standard for when a seizure occurs based only upon the positioning of a police vehicle. No such standard exists because of application of the reasonable-person, objective totality-of-the-circumstances analysis set forth by the Supreme Court and Sixth Circuit law. Employing that analysis, the Court recognized that, in Gross, a spotlight was turned on the vehicle; in Young, three officers shined flashlights on the vehicle; and, in See, the police pulled in front of the parked car directly into its passengers' default field of vision. (Doc. No. 225 at 5.) The Court explained such obvious actions that would result in awareness of the police presence "necessarily contributed to the court's conclusion *that a reasonable person in the defendant's position would not have felt free to leave*." (Id.) The Court simply did not, as Johnson contends, suggest that these cases "cite the subjective standard as affecting the time of seizure." (Doc. No. 265 at 9.)

The Court's reliance on another car-blocking case, United States v. Williams, 525 F. App'x 330 (6th Cir. 2013), rather than also being erroneous as Johnson suggests, further demonstrates the Court's objective analysis and recognition of the importance of being alert to police presence. (Doc. No. 225 at 6-7.) In Williams, the Court eschewed a "mechanical approach" for one considering "the totality of surrounding circumstances." Williams, 525 F. App'x at 333. There, the objective circumstances involved how the police vehicle was parked and that the police had used a "panoply of probing lights" to alert that they were "not simply putting questions." Id. The Court of Appeals explained that its decision was based on the conclusion that "*a reasonable person in the defendant's shoes*, already hemmed into a parking space with a single narrow egress, would

4

no longer feel free to terminate such an encounter." Id. at 333. Chief Judge Cole further explained that the Court considered the "aggregate effect" of the "objective behavior" of the police in determining whether the police created a coercive situation that "*communicated to the vehicle's occupants* that they were under investigation." Id. at 633-34. This is, of course, critically important, because whether *any person* is free to leave, as a matter of basic logic, necessarily depends on the degree to which they are "alert to the fact of law enforcement's potential impediment to his or her departure." (Doc. No. 225 at 7.) Thus, under Williams, Young, Gross, See, it is wholly appropriate for the Court to consider all of the circumstances, including when the police would have alerted a reasonable person in Johnson's place to their presence. Even where a defendant (such as Johnson) makes a claim to "passive acquiescence," the Court must still apply the objective test and evaluate the totality of the circumstances, Brendlin, 551 U.S. at 255.

The Court applied an objective analysis to the February 13, 2017 stop. The Court explained the considerations that day: (1) the police vehicle was unmarked and would not have provided an immediate clue as to the detectives' identity; (2) the police vehicle did not have blue lights on the roof; rather, the blue lights were embedded in the headlights and windscreen and are difficult to see by a reasonable person sitting low in another vehicle; (3) the police vehicle arrived and parked horizontal to the rear of Johnson's parked car in a row of crowded cars, making it unlikely that someone facing forward in Johnson's car could see the police vehicle's lights either on approach or when the vehicle came to a stop; and (4) there was no testimony that the detectives did anything when they parked to gain the passengers' attention such as engage a siren. (Id. at 7-8.) This objective evidence was consistent with Detective's Moore's testimony that the occupants of Johnson's vehicle were not alerted to the police presence prior to the officers' arrival at the

5

passenger's side car window.[1] (Id. at 8; Day Two Trial Tr. at 205-06; 230; 232.) This Court has twice considered Detective Moore's testimony on this Wal-Mart stop. The Court finds Detective Moore highly credible, professional and articulate.

Based upon these circumstances, the Court concluded that: "[T]here is no evidence that Johnson was aware of the detectives blocking him in (at :58 seconds) or believed he was not free to leave until he reacted to the police presence at his car window (at 1:03 seconds). *Nor has the Court been presented with a compelling argument that a reasonable person in Johnson's position would have had any greater degree of awareness.*" (Id. at 8.) This this precisely the inquiry that the Supreme Court, Sixth Circuit, and Johnson demand. That the Court observed "Johnson's own behavior *supports*" this objective conclusion, (id. at 8) is a far cry from inventing a new "subjective standard." Nevertheless, to clarify any confusion – real or imagined – the Court hereby makes clear that it has applied the objective standard and considered at what point, in view of all of the circumstances surrounding the February 13, 2017 stop, a reasonable person in Johnson's position in the passenger seat of the car would have believed that he was not free to leave. Chesternut, 486 U.S. at 573; Goyer, 567 F. App'x at 417. Johnson has failed to articulate any clear error of law. Rather, Johnson merely continues to disagree with the Court's conclusion,

III.     Conclusion

For the foregoing reasons, Johnson's Motion for Reconsideration (Doc. No. 265) is denied. An appropriate order has entered. (Doc. No. 271.)

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] At trial, Detective Moore also provided further objective evidence that the officers had not drawn or raised their weapons until reaching the car. (Day Two Trial Tr. at 205.)